

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LLEWELLYN S. GEORGE,

                Plaintiff,

v.

COUNTY OF WESTCHESTER and
RABBI ABRAHAM HOROWITZ,

                Defendants.

17-CV-3632 (NSR)(JCM)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Llewellyn S. George ("Plaintiff"), a former inmate at the Westchester County Jail ("WCJ"), commenced this pro se action under 42 U.S.C. § 1983[1] on May 12, 2017. (*See* Compl., ECF No. 2.) Plaintiff alleges that the County of Westchester ("Westchester County") and Rabbi Abraham Horowitz ("Rabbi Horowitz") (collectively, "Defendants")[2] violated his right to free exercise of religion under the First and Fourteenth Amendments. (*See* Compl. at 3.)[3]

    Currently before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot., ECF No. 18). For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

---

[1] The Court construes the Complaint as asserting a Section 1983 claim. Although the Complaint makes no mention of that statute, Section 1983 is "a vehicle for remedying . . . constitutional violations." *Chan v. City of New York*, 1 F.3d 96, 103 (2d Cir.1993).

[2] On June 7, 2017, this Court *sua sponte* dismissed named Defendant Westchester County Department of Correction. (*See* Order of Service, ECF No. 6.)

[3] As Plaintiff is proceeding pro se and his Complaint is the standard fillable form, all citations thereto will be to pages as identified on the Court's Case Management and Electronic Case Files System ("ECF"). Further, all citations to documents attached to the Complaint will be referred to as lettered exhibits as defined by the Court.

1

**FACTUAL ALLEGATIONS**

The following facts are derived from the Complaint and the documents appended thereto, and are assumed to be true for the purposes of this motion. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

From the relevant period of December 10, 2016 to May 3, 2017, Plaintiff was incarcerated at WCJ. During this period of incarceration, Plaintiff submitted numerous requests to facility staff to attend Jewish congregational worship, all of which were denied. (Compl. at 3.) Although there is a sizeable portion of Jewish inmates at WCJ, facility staff maintained that "there were not enough Jewish inmates" to justify providing congregational worship. (*Id.*) WCJ inmates of other religious backgrounds, however, were permitted to attend congregational services on a weekly basis. (*Id.* at 4.)

Plaintiff additionally asserts that WCJ's rabbi, Rabbi Horowitz, has a long history of tending to Caucasian Jewish inmates, while neglecting the spiritual needs of non-Caucasian inmates of the same faith. (*Id.* at 4.)

Plaintiff filed at least two grievances relating to the lack of congregational worship for Jewish inmates at WCJ, which he attached to his Complaint.[4] (*See* Compl., Ex. J, "Grievance # P-171-16" at 25–27; Ex. C, "Grievance #J-108-17" at 8, 10–13.)

Plaintiff filed the first of these grievances, Grievance # P-171-16, on December 29, 2016. On January 3, 2017, the grievance coordinator at WCJ, Captain Roberts, denied Plaintiff's grievance, noting that "Rabbi Horowitz comes to the jail on Tuesdays and Fridays and meets with

---

[4] The court notes that Grievance # P-171-16 references an additional grievance concerning denial of congregational religious services filed earlier in December, 2016 that, along with an unrelated grievance, seemingly went unaddressed.

the Jewish inmates on an individual basis" and "perform[s] congregate services for the Jewish population during the High Holy days." (*See id.*, Ex. H, "January Memo" at 22–23.)

That same day, Plaintiff appealed Captain Robert's decision to Karl Vollmer, the Assistant Warden at WCJ. Vollmer eventually issued a decision agreeing with Captain Robert's determination. (*See id.*, Ex. I, "Warden's Decision" at 24.)

On January 9, 2017, Plaintiff appealed Vollmer's decision to the Citizen's Policy and Complaint Review Council of the New York State Commission of Correction ("the CPCR Council"). (*See id.*, Ex. E, "Council's #P-171-16 Decision" at 16.) The CPCR Council sustained the action taken by WCJ's administration on March 9, 2017. (*Id.*)

Plaintiff filed the second attached grievance, Grievance #J-108-17, on February 20, 2017, again requesting congregational worship for Jewish inmates. (*See id.*, at 10–13, Ex. C at 10.) In response to Grievance #J-108-17, Captain Roberts' reiterated that Rabbi Horowitz meets with Jewish inmates individually and hosts congregational worship on High Holy Days. (*See id.*, Ex. D, "February Memo" at 14–15.)

Plaintiff again appealed Captain Robert's decision to the Assistant Warden, who denied said appeal on March 2, 2017. (*See id.*, Ex. B, "Warden's March Decision" at 7.) Plaintiff then appealed the Assistant Warden's decision to the CPCR Council. The CPCR Council again sustained the action taken by WCJ. (*See id.*, Ex. A, "Council's April Decision" at 6.)

In addition to these grievances, Plaintiff also wrote two letters addressed to Rabbi Horowitz, dated March 5, 2017 and March 26, 2017, requesting to participate in all Passover activities including congregational worship. (*See id.*, Ex. L "March 5th Letter" at 29; Ex. K "March

26th Letter" at 28.) Plaintiff does not allege that Rabbi Horowitz ever responded to his letters or otherwise addressed his concerns.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In considering a 12(b)(6) motion, the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation" *Id.* at 678 (internal quotation marks omitted). Nor must the Court credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *Kleinman v. Elan Corp.*, *plc.* 706 F.3d 145, 152 (2d Cir. 2013).

Complaints of *pro se* Plaintiffs are to be treated with great solicitude and should be construed in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). They

4

must be read "to raise the strongest arguments that they suggest [.]" *Harris v. City of N.Y.*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleading must contain factual allegations that sufficiently "raise a right to relief above the speculative level [,]" *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the Court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## I. First Amendment Claim

### A. Adequacy of Plaintiff's Pleadings

Plaintiff alleges that Defendants violated his First Amendment free exercise rights by denying him access to congregational worship over a period of five months. (*See* Compl. at 3–4.) In response, Defendants argue that they have provided sufficient accommodations for Plaintiff's religious practice and that Plaintiff has, thus, failed to state a free exercise claim. (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs. Mem.") at 4, ECF No. 19.) This Court disagrees and finds that Plaintiff has adequately alleged a violation of the Free Exercise Clause of the First Amendment.

i. Applicable Law

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience.' " *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). The Second Circuit has acknowledged, however, that "although prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a

5

retraction justified by the considerations underlying our penal system." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citations omitted).

To establish a free exercise claim, courts in this Circuit have generally required inmate plaintiffs to plead that the disputed conduct substantially burdened a sincerely held religious belief.[5] *See Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *5 (S.D.N.Y. July 18, 2016); *Holland v. Goord*, 758 F.3d 215, 220–23 (2d Cir. 2014). Defendants "then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct [.]" *Salahuddin*, 467 F.3d at 275.

ii. Application

In the present action, Plaintiff has plausibly alleged his sincerely held beliefs were "substantially burdened" by prison administrators' repeated refusal to host congregate religious services for Jewish inmates throughout his time at WCJ.

"It is well established that prisoners have a constitutional right to participate in congregate religious services." *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993).While denying inmates congregate services over a short period of time may not substantially burden that right, denial for prolonged periods can rise to the level of a First Amendment violation. *See Salahuddin v. Goord*, 467 F.3d at 277 (defendants violated plaintiff's free exercise right by excluding him from religious services during months in disciplinary keeplock); *Fusco v. Cty. of Putnam, New York*, No. 15-CV-08132 (NSR), 2018 WL 1889070, at *9 (S.D.N.Y. Apr. 18, 2018) (finding inmate's

---

[5] The Second Circuit has not squarely addressed the continuing vitality of the substantial burden test following the Supreme Court's admonition in *Employment Division v. Smith*, 494 U.S. 872 (1990), that application of the test "embroils courts in the unacceptable business of evaluating the relative merits of differing religious claims." *Holland*, 758 F.3d at 220 (internal quotation marks omitted); *Salahuddin*, 467 F.3d at 274 n.3. Nevertheless, the Court need not linger on the issue: even assuming the continuing vitality of the substantial burden test, Plaintiff has stated a free exercise claim.

allegations that he was kept from attending religious services during the pendency of his 90 day segregation plausibly alleged his First Amendment rights were violated); *Jones v. Malin*, No. 15-CV-5381 (VB), 2017 WL 985943, at *3 (S.D.N.Y. Mar. 13, 2017) (finding that an allegation that an inmate was prevented from participating in religious services for two months plausibly constituted a substantial burden on his right to free exercise); *Cf. Williams v. Weaver*, No. 03-CV-0912 (LEK) (GHL), 2006 WL 2794417, at *5 & n.29 (N.D.N.Y. Sept. 26, 2006) (exclusion from two weekly religious services does not constitute substantial burden).

Here, construing the complaint liberally, Plaintiff alleges he was denied congregate religious services from December 10, 2016 to May 3, 2017—or nearly five months. (*See* Compl. at 3–4.) Such a prolonged period without congregate services is sufficient to constitute a substantial burden. *See Woodward v. Perez*, No. 12-CV-8671 (ER), 2014 WL 4276416, at *4 (S.D.N.Y. Aug. 29, 2014) ("Significantly, [at the motion to dismiss stage], the plaintiff's burden in demonstrating substantial burden is not a particularly onerous task" (internal quotation marks and citations omitted)); *Rossi v. Fishcer*, No. 13-CV-3167 (PKC) (DF), 2015 WL 769551, at *9 (S.D.N.Y. Feb. 24, 2015) (finding Plaintiff plausibly alleged that his right to his free exercise of religion was substantially burdened where the prison permitted congregational worship on Wednesdays in place of a traditional Friday Sabbath service). Moreover, "it makes no difference [P]laintiff had access to Rabbi Horowitz on an individualized basis, as [P]laintiff has a constitutional right to '*congregate religious services*.'" *George v. County of Westchester*, No. 13-CV-4511(VB), 2014 WL 1508612, at *12 n.5 (S.D.N.Y. Apr. 10, 2014) (quoting *Salahuddin v. Coughlin*, 993 F.3d at 308). Accordingly, Plaintiff has made the required threshold showing for his free exercise claim.

Defendants, on the other hand, have failed to "proffer an explanation as to why [Plaintiff] was denied access to religious services, or articulate a particular penological interest that was

served by denying [Plaintiff] such access." *Hamilton v. Deputy Warden*, No. 15-CV-4031 (KBF), 2016 WL 6068196, at *9 (S.D.N.Y. Oct. 13, 2016) (internal quotation marks omitted) (quoting *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989)). Moreover, even if Defendants had proffered such an explanation, the evaluation of penological interests is a fact-intensive inquiry that is not ordinarily amenable to resolution on a motion to dismiss. *See Washington v. Gonyea*, 538 F. App'x 23, 27 (2d Cir. 2013) (summ. order); *see also Ackridge v. Aramarck Corr. Food Servs.*, No. 16-CV-6301 (KMK), 2018 WL 1626175, at *18 (S.D.N.Y. Mar. 30, 2018) (denying motion to dismiss free exercise claim where the record did not yet allow for a thorough review of the relevant factors the Court must consider in determining whether there is a penological interest that justified the religious burden).

The Court, therefore, finds that Plaintiff has plausibly alleged a violation of his First Amendment free exercise rights.

### B. Personal Involvement of Rabbi Abraham Horowitz

Defendants nevertheless contend that Plaintiff has failed to adequately allege the personal involvement of Rabbi Horowitz in any First Amendment violation. (*See* Defs. Mem. at 7.) This Court agrees.

To state a Section 1983 claim against any individual defendant, a plaintiff must allege the defendant's personal involvement in the claimed violation of his rights. *Provost v. City of Newburgh,* 262 F.3d 146, 154 (2d Cir.2001). In the past, the Second Circuit has noted that the personal involvement of a defendant may be established by allegations that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who

8

committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights or inmates by failing to act on information indicating unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

However, Courts in this Circuit are "divided as to whether the five categories announced in *Colon* may still be used as bases for liability under § 1983" following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Allah v. Annucci,* No. 16-CV-1841 (KMK), 2017 WL 3972517 at *6 (S.D.N.Y. Sept. 07, 2017).[6] Nevertheless, even assuming the continuing vitality of all of the *Colon* factors, Plaintiff has failed to allege the personal involvement of Rabbi Horowitz.

The only allegation against Rabbi Horowitz relating to the lack of congregate services at WCJ in the Complaint is Plaintiff's claim that he sent the Rabbi two letters requesting to participate in all Passover activities, including congregational worship. (*See id.*, Ex. L "March 5th Letter" at 28; Ex. K "March 26th Letter" at 29.) However, Plaintiff does not allege that Rabbi Horowitz responded to his letters or otherwise acted on his grievances in any way.[7] Standing alone, such allegations are insufficient to establish Rabbi Horowitz's personal involvement in the alleged First Amendment violation. *See Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) ("[B]ecause Section 1983 liability cannot be predicated on a theory of *respondent superior*,. . . a

---

[6] In *Iqbal,* the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676. In so holding, the Court explicitly rejected the argument that, "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id.* at 677.

[7] Though Plaintiff alleges that "jail employees" repeatedly denied his requests to attend religious services between December 2016 and May 2017, (Compl. at 4), those allegations are not specific enough to attribute to Rabbi Horowitz. *See Martinez v. Healey*, No. 14-CV-302 (NSR), 2014 WL 5090056, at *4 (S.D.N.Y. Oct. 10, 2014) ("Oblique references to individuals who may or may not be defendants do not constitute well-pleaded allegations that particular defendants took particular steps to deny Plaintiff his rights under the Free Exercise clause.").

defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish [personal involvement]." (internal quotation marks and citations omitted)); *Pugh v. Goord*, 571 F.Supp.2d 477, 515 (S.D.N.Y. 2008) ("Personal involvement will be found . . . where a supervisory official receives *and acts* on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint" (emphasis added) (internal quotation marks omitted)); *accord Garcia v. Watts*, No. 08 CIV. 7778 (JSR), 2009 WL 2777085, at *15 (S.D.N.Y. Sept. 1, 2009) ("[C]ourts in this Circuit have held defendants liable when their involvement extends beyond the mere receipt of letters to providing detailed responses defending the institution or explaining the treatment.").

Furthermore, although Plaintiff alleges that he was "deprived of access to congregational worship during Passover," (Compl. at 4), he failed to adequately allege that Rabbi Horowitz was either directly involved in this deprivation or, alternatively, that the Rabbi had any role in the creation or continuation of WCJ's congregational worship policies. *Cf. Pugh*, 571 F. Supp. at 514 (finding defendant was personally involved in the denial of separate services to Shi'ites because he made certain contributions to formulation of policy, despite the fact that he was not the ultimate authority (internal quotation marks omitted)). Without any such allegations, Plaintiff cannot establish that Rabbi Horowitz was personally involved in the alleged First Amendment violations. Accordingly, Plaintiff's First Amendment claim against Rabbi Horowitz is dismissed.

To the extent that Plaintiff may, in good faith, plead additional facts regarding Rabbi Horowitz's personal involvement in the alleged constitutional violation, Plaintiff is granted leave to replead his claim. *See Barnes v. United States*, 204 F. App'x 918, 919 (2d Cir. 2006) (summ. order) (noting that a pro se complaint "should not be dismissed without granting leave to replead at least once when [a liberal] reading gives any indication that a valid claim might be stated"

(internal quotations omitted)); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal quotation marks omitted) (noting this Circuit's strong preference for resolving disputes on the merits").

### C. Monell Liability

Defendants additionally argue that even if Plaintiff successfully alleged a constitutional violation, he has failed to establish *Monell* liability against Defendant Westchester County. (*See* Defs. Mem. at 5–6.) This Court disagrees.

A municipality like Westchester County is liable under Section 1983 only "when execution of a [municipal] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus,

> to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy [or custom] of the municipality caused the constitutional injury.

*Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir.2008).

A plaintiff may satisfy the "official municipal policy or custom" requirement by alleging the existence of:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who came into contact with the municipal employees.

11

*Brandon v. City of New York,* 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (internal citations omitted); *see also* Fusco, 2018 WL 1889070, at *4.

"Moreover, municipal liability does not lie *only* where the official policy or ordinance is itself unconstitutional." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 125 (2d Cir. 2004) (emphasis added). Rather, where a municipality's official policy is constitutional, but the municipality "causes its employees to apply it unconstitutionally, such that the unconstitutional application might itself be considered municipal policy, the city may be held liable for its employee's unconstitutional acts." *Id.* Such circumstances exist where, for example, the city's official policy is valid, but its actual practice is not. *Id.* at 125–26.

In the present action, Plaintiff has stated a plausible *Monell* claim against Westchester County. Although the County maintains a constitutional policy regarding the right of detainees to congregate for religious worship, *see* N.Y. Comp. Codes R. & Regs. tit. 9, § 7024.2(a),[8] the County, in practice, does not appear to allow WCJ's Jewish inmates to congregate for religious worship. As Captain Roberts's responses to Plaintiff's grievances state: "Rabbi Horowitz comes to the jail on Tuesdays and Fridays and meets with the Jewish inmates on an individual basis. He does perform congregate services for the Jewish population during the High Holy days." (Compl. at 14–15; 22–23, Ex. H at 23, Ex. D at 15.) These decisions, which were affirmed by both the Assistant Warden and the CPCR Council of the New York State Commission of Correction, give rise not only to an inference that WCJ does not actually permit Jewish inmates to *regularly* congregate for religious services, but further, that this practice of the county's subordinates is "'so permanent and well settled as to constitute a custom or usage with the force of law.'" *M.K.B. v.*

---

[8] This regulation states, in relevant part: "[A]ll prisoners shall be permitted to congregate for the purpose of religious worship and other religious activities" so long as such activities do not threaten safety, security, or good order of county jail.

12

*Eggleston,* 445 F.Supp. 2d 400, 433 (S.D.N.Y.2006) (quoting *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 870–71 (2d Cir.1992)); *see also Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (holding that "[a] municipal policy may be pronounced or tacit and reflected in either action or inaction."); *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (A "city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution") (internal quotation marks omitted)).

Accordingly, the Court finds that Plaintiff has alleged a plausible *Monell* claim.

## **II.** **Fourteenth Amendment Claim**

Although Defendants did not address this claim in their motion, Plaintiff's Complaint, construed liberally, plausibly alleges a Fourteenth Amendment equal protection claim against Westchester County. Plaintiff does not, however, allege a plausible Equal Protection claim against Rabbi Horowitz.

i. Applicable Law

The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (internal quotations marks omitted) (quoting *City of Cleburne v. Cleburne Living Ctr.*, *Inc.*, 473 U.S. 432, 439 (1985)).

"To state a violation of the Equal Protection Clause, a plaintiff must allege 'that he [or she] was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 590–91 (S.D.N.Y. 2015) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).

In the context of religious discrimination, Courts in this Circuit have required prison policies that make distinctions between religious groups to "withstand a rational basis review and be reasonably related to legitimate penological interests." *Williams v. King,* 56 F. Supp. 3d 308, 323 (S.D.N.Y. 2014). "Thus, even if plaintiffs can demonstrate that two groups are similarly situated, disparate treatment may still be warranted if the government can demonstrate that the distinctions are reasonably related to legitimate penological interests." *Powell v. City of New York*, No. 14-CV-9937 (PAC) (BCM), 2016 WL 4159897, at *7 (S.D.N.Y. July 14, 2016) (internal citations omitted) (quoting *Pugh,* 571 F Supp. 2d at 502) *report and recommendation adopted*, No. 14-CV-9937 (PAC) (BCM), 2016 WL 4147203 (S.D.N.Y. Aug. 3, 2016).

    ii.    Westchester County

Here, Plaintiff alleges that WCJ inmates of the Jewish faith are deprived of congregational worship while inmates of other religions, such as Protestants, Muslims and Catholics, are permitted to attend services on a weekly basis. (*See* Compl. at 4.) Reading Plaintiff's claims generously, he appears to allege that Westchester County disparately applies its policy regarding congregate worship to allow WCJ inmates of other religious backgrounds to attend religious services while denying that same opportunity to Jewish inmates. Such allegations are sufficient to survive Defendants' motion to dismiss, particularly where Defendants have failed to explicitly articulate any penological justification for their alleged conduct. *See Lopez v. Cipolini*, 136 F. Supp. 3d 570, 592 (S.D.N.Y. 2015) (finding plaintiff's allegations that she was prohibited from attending religious services "because of her hair and her sexuality" sufficient to state an equal protection claim where "the Court [was] unable to conceive of a legitimate penological interest that would be serviced by denying Plaintiff the right to attend religious services" based on those considerations); *Rosado v. Herard*, No. 12-CV-8943, 2014 WL 1303513, at *8 (S.D.N.Y. Mar. 25, 2014) (finding

that because there was "no obvious administrative reason" for excluding "Spanish speaking inmates" from attending group sessions, "discriminatory intent—at least at the pleading stage—can be inferred").

iii. Rabbi Horowitz

Plaintiff further claims that Rabbi Horowitz has a long history of tending to the spiritual needs of Caucasian inmates while neglecting non-Caucasian inmates of the Jewish faith. (*See* Compl. at 4.) To the extent that Plaintiff raises an Equal Protection Claim against Rabbi Horowitz directly, the claim fails.

Plaintiff's allegation against Rabbi Horowitz is precisely the type of "threadbare recital" that is insufficient to overcome a motion to dismiss. *Iqbal*, 556 U.S. at 678. Indeed, Plaintiff provides no specific factual allegations regarding *how* Rabbi Horowitz has treated him differently from any inmate based on his race. Plaintiff does not allege, for instance, that Rabbi Horowitz only met with, or held services for, inmates of particular races. As such, Plaintiff fails to state a claim for an equal protection violation. *See Mohamed v Powers*, No. 14-CV-1389 (TJM) (TWD), 2015 WL 849272, at *5 (N.D.N.Y. Dec. 10, 2015) (dismissing equal protection claim where plaintiff failed "to allege any facts to suggest how he was treated any differently than similarly situated inmates"); *Thomas v. Annucci*, No. 05-CV-638 (FJS) (DRH), 2008 WL 3884371, at *4 (N.D.N.Y. Aug. 19, 2008) ("Conclusory allegation[s] of discrimination, without evidentiary support or allegations of *particularized incidents* and absent allegations of discriminatory intent, do not state a valid claim and so cannot withstand a motion to dismiss." (emphasis added) (internal quotation marks omitted)).

Accordingly, Plaintiff's equal protection claim, as asserted against Rabbi Horowitz, is dismissed without prejudice. *See Barnes v. Fedele*, 760 F.Supp.2d 296, 301 (W.D.N.Y.2011)

(holding prisoner failed to state equal protection claim where he alleged no facts in his complaint to support a claim that he was treated differently on account of his religion). To the extent Plaintiff can provide more detailed factual allegations to support his claim, he is granted leave to replead.

### III. Limitation on Recovery

Finally, Defendants argue that Plaintiff's claims should be dismissed because Plaintiff did not suffer any physical injury attributable to the alleged constitutional violations. (Defs. Mem. at 8.) The Court, however, finds that argument is unpersuasive; the nature and extent of Plaintiff's injuries do not warrant dismissal of his claims.

Section 1997e(e) of the Prisoner Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. §1997e(e). The Second Circuit has clarified, however, that this provision does not require a prisoner to allege a physical injury, or any injury, before seeking injunctive relief, declaratory relief, nominal damages, or punitive damages. *See Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002).

Indeed, courts in this district have explicitly noted that §1997e(e) "does not bar an award of compensatory damages for First Amendment violations, which allege intangible deprivations of liberty and personal rights." *Jones v. Annucci*, No. 16-CV-3516 (KMK), 2018 WL 910594, at *8 (S.D.N.Y. Feb. 14, 2018) (internal quotation marks omitted) (citing *Malik v. City of New York*, No. 11-CV-6062, 2012 WL 3345317, at *16 (S.D.N.Y. Aug. 15, 2012), *adopted by* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012)). Such damages "are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering." *Rosado v. Herard*, No.

12-CV-8943, 2014 WL 1303513, at *13 (S.D.N.Y. Mar. 25, 2014) (quoting *Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir.2004)); *Lipton v. County of Orange*, 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004) (holding that a "First Amendment deprivation presents a cognizable injury standing alone[.]"); *Holland v. City of New York*, 197 F. Supp. 3d 529, 537 (S.D.N.Y. 2016) (holding that under the PLRA, a plaintiff "may still recover compensatory damages for the loss of a constitutional liberty interest" (internal quotation marks omitted)). Accordingly, Defendants' Motion is denied in this regard.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED in part and DENIED in part. Plaintiff shall have until August 10, 2018 to amend his Complaint in accordance with this Court's decision. If Plaintiff elects to file an amended complaint, Defendant shall have until 21 days from the date of Plaintiff's filing to move or file responsive pleadings. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 18. The Clerk of the Court is further directed to mail a copy of this Opinion & Order to Plaintiff's most recent address and file proof of such mailing on the docket.

Dated: July 10, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge